Rowe *v.* Chandler.

## ROWE *vs.* CHANDLER & DENNISON.

Where two persons are sued jointly upon a joint contract, judgment may be rendered in favor of the plaintiff against one of the defendants, and in favor of one of the defendants against the plaintiff.   Thus, where A. sued B. & C., as partners, and the misjoinder was not set up in the answer, and the plaintiff's demand was proved against B., but not against C., and verdict and judgment were given in favor of the plaintiff against B. and in favor of C. against the plaintiff; on appeal, the case was affirmed.

The case of *Merrifield* v. *Cooley,* (4 *How. Pr. Rep.* 272,) overruled.

Under the Practice Act of 1850, the rules of the old system of pleading and practice, whether legal or equitable, should be applied, irrespective of former technical distinctions, to *all* actions under the new system, where they may be properly applied, and are not inconsistent with statutory provisions.   *Per* BENNETT, J.

APPEAL from the superior court of the city of San Francisco. The point on which the judgment of the court is based, is suffi-

ciently stated in the opinion of the court. The cause was twice argued. On the first argument, the court, taking for its guide the case of *Merrifield* v. *Cooley*, (4 *How. N. Y. Pr. Rep.* 272,) reversed the judgment of the superior court. The opinion was delivered by BENNETT, J., as follows:

" The action was brought against the defendants Chandler & " Dennison upon an alleged joint indebtedness. Process was " served on both of them; but the plaintiff, at the trial, failed " to prove a joint liability against both defendants. He did, " however, make out a cause of action against one of the de- " fendants, and a verdict was taken, and judgment rendered, in " favor of one defendant and against the other. This was " erroneous. (*Merrifield* v. *Cooley*, 4 *How. Pr. Rep.* 272.)

" At the common law, in an action against two or more de- fendants upon an alleged joint undertaking or contract, the " judgment must be against all the defendants, or in favor of all. " In such case, if the plaintiff fail, at the trial, to establish a " joint contract or undertaking, all the defendants are entitled " to verdict and judgment, though it be proved that one of " them would have been liable had the suit been brought " against him alone. Judgment reversed."

The plaintiff moved for a re-hearing, which was granted; and the cause was again argued by

*Edward Norton*, for the plaintiff, and

*John Chetwood*, for the defendant.

*By the Court*, BENNETT, J. The complaint alleges an in- debtedness by the defendants as partners. The answer denies the indebtedness. At the trial, the plaintiff made out a cause of action against the defendant, Chandler, but failed to estab- lish a *joint* indebtedness of both defendants. The jury brought in a verdict in favor of Chandler and against Dennison, and judgment was rendered in accordance with such verdict. The question is thus presented, whether, if, in an action on contract against two or more defendants, the plaintiff fails to make out

Rowe *v*. Chandler.

the *joint* liability of all, he may take judgment against one or more, who are proved to be liable.

The point is to be determined under the provisions of the Practice Act of this state, which, so far as this question is affected, is, in substance, and for the most part literally, a transcript of the Code of Procedure of the state of New York. Under that code it has been held by one of the justices of the supreme court of New York in the case of *Merrifield* v. *Cooley*, (4 *Howard's Pr. Rep.* 272,) in an action, like the present one, against several defendants to recover damages for the breach of a contract, that the plaintiff must recover against all the de-defendants, or none. Our former decision in this cause was in accordance with the doctrine of *Merrifield* v. *Cooley ;* but, on a rehearing, and after elaborate arguments by counsel on both sides, we have come to the conclusion that the decision in *Merrifield* v. *Cooley*, and our former decision, are both wrong.

It is not disputed that, at common law, as a general rule, where a party brought his action upon a contract against two or more defendants, he was obliged to make out a cause of action against all the defendants, or he could recover against none. (1 *Chitty's Pl.* 34; *Mannahan* v. *Gibbons*, 19, *J. R.* 109.) This general rule was, however, subject to several exceptions. Thus, if one of the defendants, after the making of the contract, had received his discharge in bankruptcy, although the practice in England required all the joint contractors to be sued, (*Bevil* v. *Wood*, 2 *Maule & Selw.* 23,) yet judgment might be rendered in favor of the person so discharged, and against the others. (1 *Chitty's Pl.* 35; *Camp* v. *Gifford*, 7 *Hill*, 169.) So also, contrary to the English practice, (1 *Chitty's Pl.* 51,) it has been held in New York and Massachusetts, that where one of several defendants establishes his infancy at the time of making the contract, judgment may be rendered in his favor, and against the other defendants. (*Hartness* v. *Thompson*, 5 *J. R.* 160; *Woodworth* v. *Marshall*, 1 *Pick. Rep.* 500.) In the cases last cited, the court seems to have considered the question rather as a matter of practice, to be decided upon convenience and policy, than as a matter of principle.

It was settled law, under the old system of practice, that where one of several joint contractors was sued, the plaintiff might proceed and take judgment against him, unless he interposed a plea of non-joinder in abatement; (1 *Chitty's Pl.* 52, 53;) whereas, in case too many persons were made defendants, it was a fatal defect, according to circumstances, upon demurrer, motion for nonsuit at the trial, motion in arrest of judgment, or writ of error. (*Id.* 50.) Under that system, it was, therefore, necessary, to plead non-joinder in abatement, or the defendant was deemed to have waived all objection, but it was not necessary to plead mis-joinder in abatement, and a defendant might take advantage of this defect at any stage of the proceedings. This distinction proceeded upon the ground, that the law held the plaintiff under no obligation to know that he had not joined a sufficient number of persons as defendants in the suit, and that the person sued must come in and inform him of the defect by plea in abatement, and give him a better writ; but that he was bound to know that he had joined too many persons, and that neither defendant was obliged to give him any information on the subject until after it was too late to correct the mistake. Thus, A. is doing business under the name and firm of A. & Co., and B. is a member of the firm. There is an indebtedness of the firm, upon which suit is brought against A. alone. Now, the old system says, that the plaintiff is not bound to know that B. was a joint contractor, and that A., if he wishes to have B. joined with him in the suit as a co-defendant, must, at an early stage of the proceedings inform the plaintiff of the error into which he has run, in order that he may be enabled to correct it. At the same time, if B. were, in truth, not a partner with, but a clerk or servant of A., then the plaintiff must know that fact; and if a suit were brought against them jointly on an indebtedness of A. & Co., neither A. nor B. would be under any obligations to raise the objection and have the mistake corrected in the outset, but might permit the suit to proceed to trial and then avail himself of the mis-joinder. Now it would seem that, if the plaintiff is bound to know the number and names of the persons who had contracted with him,

Rowe *v.* Chandler.

so as not to excuse him for joining too many, he ought equally to know the number and names of the persons who had contracted with him, so as not to excuse him for joining too few— that if, in the one case, he be required to know who ought to be made defendants, he should be equally bound to know the same thing in the other case. And it strikes us as reasonable, that, if a defendant be required to plead a non-joinder in abatement, or be deemed to have waived it, he should, at the same time, be required to plead a mis-joinder in abatement, or be deemed to have waived it, and to subject himself to a judgment, in case the indebtedness in the complaint be proved against him alone.

There is nothing in the form or substance of the old plea of the general issue, which can distinguish the two cases. If it be said, that, by the plea of the general issue in an action against two or more, they deny the joint indebtedness where the debt was contracted by one of them, so it may, with equal propriety, be urged in an action against one, where in truth the contract was made by two or more, that the plea of the general issue denies the separate indebtedness. Indeed, the distinction adverted to seems to be one of those arbitrary and unmeaning rules, which disfigure the body of the common law, and which, in many cases, disturb, and, in some, entirely divert, the course of justice.

In *Minor et al* v. *The Mechanics' Bank of Alexandria,* (1 *Peters,* 46,) the strictness of the common law practice was relaxed still further than it had been in *Hartness* v. *Thompson,* and *Woodworth* v. *Marshall.* It was held in that case, that, though on a joint and several bond the plaintiff might sue one or all of the obligors, and, in strictness of law, could not sue an intermediate number—that he must either sue all, or not more than one—yet, if there was error in this respect, it could be taken advantage of only by plea in abatement, and was waived by pleading to the merits. Mr. Justice Story says, in that case, that the authorities proceeded upon the ground, that the question was matter of practice, to be decided upon considerations of policy and convenience, rather than matter of absolute principle, and that the court was left at full liberty to

entertain such a decision as its own notions of general conve-
nience, and legal analogies, would lead it to adopt; and he adds
that, "in the administration of justice, matter of form, not
"absolutely subjected to authority, may well yield to the sub-
"stantial purposes of justice."

It is matter of every day practice in courts of equity to add
or strike out parties, to render a decree against some defend-
ants, and in favor of others; and, in actions at law sounding in
tort, it is always permitted to take judgment against such of
the defendants as are proved to be guilty of the wrong, while
judgment of acquittal may be rendered in behalf of others.
In some cases, such as actions against common carriers, where
the cause of action in reality arises out of contract express or
implied, the plaintiff has his election to found his action on the
contract, in which case the strict rules of non-joinder and mis-
joinder are applied; or to bring his action on the case, founded
on the breach of duty imposed on the defendants by law, and
sounding in tort, in which case it matters not whether he joins
too many or too few persons as defendants, for in either event
he takes a verdict and judgment against so many as he proves
to be liable, and has a verdict and judgment rendered against
him in behalf of those who are not proved to be guilty of the
grievances complained of. So also, where an action is brought
against one of two joint contractors, and a plea in abatement of
non-joinder is put in by the defendant, and judgment given thereon
in his favor, and a fresh suit is brought against him and the
person whose non-joinder was pleaded in abatement, here, if, on
the trial, there be not sufficient proof to establish the joint
liability of the person last brought in, he shall have judgment
in his favor, but the verdict and judgment shall, nevertheless,
be given against the other defendant, if the proof establish his
sole liability.

It must be confessed that it is difficult to perceive any solid
reason, why the same rule which is applied in equity should not
be adopted at law—why a mis-joinder should have any other
effect than a non-joinder—and why either should be more fatal
in an action at law on contract, than in an action at law in tort

—why an action against common carriers, when called assumpsit, should be subject to rules, and be followed by consequences, differing from those which apply in an action against the same defendants, and based upon the same facts, but which is denominated an action on the case—why, if judgment may be rendered in favor of one defendant and against another in an action on contract, where a plea of non-joinder has been interposed in a former suit, the same thing may not be done in case of misjoinder, where the substantial purposes of justice require it, and where the defendants have neglected to raise the proper objection at the earliest opportunity.

We have thus adverted to some of the distinctions in the old system of practice, and have noticed that there was not in any of them any " matter of absolute principle," but that they were rather "matters of practice decided upon considerations of " policy and convenience."

We will now direct our attention to the late sweeping reforms, or at least changes, which have been introduced in pleading and practice. The first section of the Practice Act of this state, which is taken from the 62d section of the *Code of Procedure of New York*, reads as follows : " There shall be in this state " hereafter but one form of action for the enforcement or pro- " tection of private rights and the redress of private wrongs, " which shall be denominated a civil action." By this section, all distinction between actions at law and suits in equity, and between the forms of such actions and suits, was abolished.

MR. JUSTICE WELLS says in *Merrifield* v. *Cooley,* (4 *Howard Pr. Rep.* 274,) that he is prepared to hold that the rules of law in force at the passage of the code, in regard to actions at law, still prevail, and apply to actions under the code which are based upon legal, as contradistinguished from equitable principles ; and, in like manner, that those equitable principles, which were in force under the old *regime*, are still applicable to actions founded upon those principles, except when the code in express terms provides otherwise. He holds, in other words, that the old distinction between the rules applicable to actions at law, and to equitable actions, so far at least as the former are con-

cerned, still continues, notwithstanding it was declared by the new system that such distinction was abolished. We think it would be giving a more proper construction to the code to say, that the rules, recognized under the old system, whether legal or equitable, should be applied, irrespective of former distinctions, to *all* actions under the new system, when they can be applied, and are not inconsistent with the provisions of the code.

So far as the pleadings are concerned, it is manifest that the spirit of the new system is to require the plaintiff to state in his complaint the facts constituting his cause of action, whether legal or equitable, (*sub.* 2, *of sec.* 38 *of Pr. Act,*) and the defendant to set forth in his answer his true ground of defense, to whichsoever of the former classes of legal or equitable defenses it may belong. Every action is to be prosecuted in the name of the real party in interest, (*sec.* 6,) any person may be made defendant who claims an interest in the controversy adverse to the plaintiff, (*sec.* 13,) and all those united in interest must be joined as plaintiffs or defendants. (*sec.* 14.) The plaintiff may unite several causes of action in the same complaint, but the causes of action so united must belong to one only of the classes specified in SECTION 61, and must affect all the parties to that action and be separately stated. (*sec.* 61.) The defendant may demur to the complaint, when it shall appear upon its face, among other causes of demurrer, that there is a defect of parties, plaintiff or defendant; or that several causes of action have been improperly united; or that the complaint does not state facts sufficient to constitute a cause of action; (*sec.* 40;) and when any of the matters, which are cause of demurrer, do not appear upon the face of the complaint, the objection may be taken by answer. (*sec.* 43.)

According to these provisions, if it appear upon the face of the complaint that there is a non-joinder of plaintiffs or of defendants, the latter may demur; and the same rule must apply, if there be a mis-joinder, for we construe the word *defect* in the act, to mean a defect in the complaint by reason of having either too many or too few parties. In case of a demurrer being interposed the complaint may be amended, (*sec.* 42,) and thus the

Rowe *v*. Chandler.

suit put in a proper condition for a trial on the merits. In case the defect does not appear on the face of the complaint, the defendant may bring it forward by his answer, and then, in certain cases, as a matter of course, and, in others, on application to the court and on such terms as may be proper, the plaintiff may amend by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, &c., (*sec.* 67, 68,) and upon the amended complaint and the answer to that, the parties are ready to proceed to trial upon the substantial merits.

It is then provided by SECTION 44, that, *if no objection be taken to the complaint by demurrer or answer, the defendant shall be deemed to have waived the same*, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action.

Let us now apply these provisions of the statute to the case in hand. There was a mis-joinder of defendants in the complaint. This defect not appearing on the face of the complaint, the objection might have been taken in the answer; the plaintiff could then have amended by striking out the name of the defendant improperly united in the suit; the other defendant could then have filed a new answer, and introduced his separate claim of set-off, if he had any, or any other separate defense. We have above seen that there is nothing more incompatible with principle in requiring a mis-joinder to be pleaded in abatement, than in requiring a non-joinder to be thus objected to; and we think that the former objection, equally with the latter, ought to be taken in the answer. By section 44, above cited, the defect is waived, unless the objection be to the jurisdiction of the court, or that the complaint does not state facts sufficient to constitute a cause of action. There is no ground for the former objection. Is there for the latter? We have above noticed in cases of bankruptcy, infancy, &c., that, although one party were discharged, judgment might be rendered against the other, which could not be done, if it were considered that the declaration did not state sufficient facts to constitute a cause of

action against him. We think that the complaint stated facts sufficient to constitute a cause of action against the defendant Dennison alone, and that he cannot object on this ground.

An objection is raised to this construction of the statute under the third subdivision of section 31. This declares that when the action is against two or more defendants, and the summons has been served on all, "judgment may be taken against any or "either of them severally, when the plaintiff would be entitled "to judgment against such defendant or defendants, if the "action had been against them or any of them alone."

In the case before us the summons was served on both the defendants, and the verdict shows that if the suit had been commenced against Dennison alone, the plaintiff would have been entitled to judgment against him. So far as the literal construction of this subdivision is concerned, there is no validity in the objection of the appellant, and it receives plausibility only by reference to distinctions under the old system, which it was the object of the new to abolish.

The provision of the act in relation to suits on promissory notes and bills of exchange is referred to in support of the appellant's position. Section 15 says: "Persons severally liable "upon the same obligation or instrument, including parties to "bills of exchange and promissory notes, may all or any of "them be included in the same action, at the option of the "plaintiff." Full effect may be given to all parts of this section without resorting to the construction given by the appellant. Thus, a suit is brought on a promissory note against A. as maker and C. as indorser. Now, if A. claims that B. is a joint maker with him, he must plead that fact in abatement, or judgment may go against him, even though it should be proved at the trial that B. was a joint maker. So, according to the interpretation which we give to the statute, if a suit be brought against A. and B. as joint makers, and C. as indorser, and either A. or B. claims that there is a mis-joinder of the other, he may insist upon that fact in his answer and set up any several defense, by way of set-off or otherwise, which he might have relied upon if he were charged as sole maker. If he neglects to do this, he

Rowe *v*. Chandler.

must be deemed to have waived the objection, and if, at the trial, he appears to have been the sole maker, there is no injustice done in giving judgment against him.

There are several other sections of the statute in addition to those already cited, which clearly indicate the intention of the legislature to have been, that all technical and formal defects should be disregarded, and that the rights of all the parties to a suit should be determined in that suit, without turning the parties round to a new action for the purpose of obviating some technical difficulty. Thus it is declared in section 17, that "the " court may determine any controversy between the parties " before it, when it can be done without prejudice to the rights " of others, or by saving their rights; but when a complete de-" termination of the controversy cannot be had without the pre-" sence of other parties, the court shall order them to be brought " in." Section 61 declares that " the court shall, in every stage " of the action, disregard any error or defect in the pleadings or " proceedings which shall not affect the substantial rights of the " adverse party, and no judgment shall be reversed or affected " by reason of such error or defect." Section 279 authorizes this court, on appeal, " to render such judgment as substantial " justice shall require, without regard to formal or technical " defects, errors or imperfections, not affecting the very right " and justice of the case." It was not pretended on the argument, that the defendant Dennison had any set-off or other matter, which he could have urged as a defense in case the suit had been brought against him alone, or that the verdict or judgment was for a greater amount than his individual indebtedness to the plaintiff, and it does not appear how substantial justice would be secured by a judgment in any respect different from that which has been already rendered.

By section 167, "judgment may be given for or against one " or more of several plaintiffs, and for or against one or more of " several defendants, and it may determine the ultimate rights " of the parties on each side as between themselves. In an ac-" tion against several defendants, the court may, in its discre-" tion, render judgment against one or more of them, leaving

" the action to proceed against the others whenever a several " judgment may be proper." The appellant urges, and the same view was taken by the court in *Merrifield* v. *Cooley*, above cited, that the words, *whenever a several judgment may be proper*, imply that there may be cases in which such a judgment would be *improper*. Undoubtedly they do; and we can conceive of cases in which, under our interpretation of the statute, such a judgment would be improper. For instance, in the illustration above given of an action on a promissory note against A. as maker, and C. as indorser, A. may plead the non-joinder of B. in abatement; judgment may then be taken against C. leaving the action to proceed against A. on the issues made by his pleadings. So also in an action against A. and B. as joint makers, and C. as indorser, either A. or B. may plead the mis-joinder in abatement, judgment may be taken against the indorser, leaving the action to proceed against the persons charged as makers, to be determined according to the issues made; or in the case last supposed, if neither of the makers should see fit to plead the mis-joinder, then judgment may be rendered *against* the one proved to be liable, and *for* the one not proved to be liable, leaving the action to proceed against the indorser. The same practice, *mutatis mutandis*, would apply in case of several persons sought to be charged as joint indorsers, when sued in the same action with the maker. We think, therefore, that full effect may be given to this section of the statute, without resorting to the construction which was given in *Merrifield* v. *Cooley*.

We have, in the outset, noticed that the provisions of our Practice Act are, for the most part, taken from the Code of Procedure of New York; and the first clause of section 167 above quoted is a copy *verbatim* of section 230 of that code. The commissioners of the code, in reporting the result of their labors to the legislature, say in reference to that section: " The object of this sec-" tion is to prevent a failure of justice when there happen to be " too many or too few parties brought into court. The ques-" tions arising on the non-joinder or mis-joinder of parties, " are the cause of much delay, vexation and disappointment,

Rowe *v.* Chandler.

" resulting, not unfrequently in an entire failure of justice. " This section will prevent them hereafter." This shows the object in view in submitting this section to the legislature, and we think the section may, although, perhaps, with occasional clashings with some other sections, be fairly interpreted so as to realize the intentions of the commissioners.

We do not see that this construction can work prejudice to any defendant, for, should it appear for the first time at the trial, that there is either a non-joinder or a mis-joinder, by reason whereof any party has been prevented from urging any defense, which, without such defect, he would be entitled to insist upon, it would not, we apprehend, be too late for him to apply to the court to be permitted to amend on such terms as would be proper.

On the whole we think that the practice should be established as adopted in the court below. But as the question is now in this state, and the defendants have been guided by an adjudicated case upon the same statutory provisions, it is no more than just that the defendant Dennison should have an opportunity of setting up any defense, by way of set-off or otherwise, which he may have separately against the plaintiff. The cause must be remanded to the court below, with leave to the defendant Dennison to apply within ten days after the filing of the *remittitur* for permission to amend his answer by setting up any set-off or other matter, which would be a defense to the action in whole or in part, if the suit had been brought against him alone. If such application be made and granted, the cause will be brought to trial and disposed of in the ordinary way; if such application shall not be made, or if made, it be denied, then the judgment appealed from will become final.

Ordered accordingly.