DES MOINES SAVINGS BANK, Appellee, v. MORGAN JEWELRY COMPANY, *et al.,* Defendants, CLARENCE SHEETS, Trustee, Intervener and Appellant.

**Practice:** REVIEW OF INTERMEDIATE RULING. An intermediate ruling may be reviewed on appeal from the final judgment, and failure to appeal from the ruling is not a waiver of this right.

**Bankruptcy:** ENFORCEMENT OF SPECIFIC LIEN: JURISDICTION. A trustee in bankruptcy, by intervening in an action to enforce a specific lien upon property of an insolvent pending in the state courts, cannot thereby oust the court of jurisdiction.

**Trial De Novo.** Where an action has been tried as in equity, it is triable *de novo* on appeal, though the pleading presents no equitable issues, and this question cannot be first raised on appeal.

**Insolvency:** PRIOR ADJUDICATION. Where a creditor, seeking to enforce a specific lien upon property of an insolvent, appears in a bankruptcy proceeding and files an answer to a petition alleging insolvency and bankruptcy is adjudged upon the issues thus tendered, such creditor cannot again litigate that question in an action by the trustee in bankruptcy for possession of the insolvent's property.

**Insolvency:** EVIDENCE. Evidence considered and held to show insolvency.

**Insolvency:** PREFERENCE: EVIDENCE. A reasonable cause to believe that a preference is intended by the giving of a mortgage, within the contemplation of the bankruptcy law, involves reasonable cause to believe that insolvency as a matter of fact exists. Evidence considered and held that there was not reasonable ground to believe the mortgagor insolvent, and that the giving of the mortgage did not therefore amount to a preference.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

TUESDAY, APRIL 5, 1904.

ACTION commenced in equity to foreclose a chattel mortgage dated October 11, 1901, executed to plaintiff by the defendant F. L. Morgan, doing business as the Morgan Jewelry

Company, and his wife, Alletta E. Morgan. The petition was filed June 21, 1902, and thereto the defendants made no appearance. Upon the application of plaintiff, a receiver was appointed, who took possession of the mortgaged chattels. On July 22, 1902, defendant F. L. Morgan was adjudged an involuntary bankrupt in the District Court of the United States, the proceedings therefor having been instituted December 18, 1901; and on August 25, 1902, Clarence Sheets, having been appointed trustee in bankruptcy, obtained leave and filed in this action a petition of intervention, setting up the bankruptcy proceedings, praying that the mortgage in question be adjudged void, and that all property in the hands of the receiver be turned over to him as trustee, and for an accounting as against the plaintiff. The plaintiff answered, and thereupon a trial was had, resulting in the dismissal of the petition of intervention. The intervener appeals.— *Affirmed.*

*Dudley & Coffin* and *Dunshee & Dorn* for appellant.

*Berryhill & Henry* for appellee.

BISHOP, J.—Having filed his petition, the intervener moved the court that the receiver theretofore appointed and then in possession of the mortgaged chattels, be restrained from further administration upon, sale or disposition of, the property in his hands, and that he be required by an order of court to turn over and surrender all thereof to the intervener, as trustee in bankruptcy. This motion was overruled, and, based thereon, error is assigned. Counsel for appellee submit in argument that inasmuch as the motion

1. PRACTICE: review of intermediate ruling.

made reference to the petition of intervention, and was based upon the allegations thereof, it therefore involved the merits of the entire controversy, being in effect a plea in abatement, and that the error, if such there was in the ruling, could be corrected only by a direct appeal; that it may not be reviewed upon assignment of error. We do not understand such to be the rule.

The right to have an intermediate ruling reviewed on appeal from final judgment is not waived by failure to appeal from such ruling, an appeal being allowable therefrom. *Jones v. Railway,* 36 Iowa, 68; *Parker v. Des Moines L. Ass'n,* 108 Iowa, 117. That the motion was grounded upon the facts pleaded in the petition of intervention presents to our minds no reason why the case should be taken out of the general rule.

Going to the merits of the motion, we think there was no error involved in the ruling complained of. At the time of the adjudication in bankruptcy, the foreclosure proceedings were pending in the state court, and the mortgaged property was in the hands of a receiver appointed by the state court awaiting a determination of such proceedings. The adjudication in bankruptcy and the appointment of a trustee did not have the effect to abate the suit thus pending, or take away the right of the state court to decree and enforce a specific lien upon the property. That the enactment of the general bankruptcy law so far supersedes and suspends the operation of state insolvency laws as that a receiver or assignee in insolvency proceedings instituted under state statutes may be properly required to surrender possession to a trustee in bankruptcy, may be conceded. And such are the cases cited by counsel for appellant. But such doctrine cannot be extended to an action for the enforcement of a specific lien. Jurisdiction of such actions in the state court is not sought to be taken away by the federal statute, and such could not well be. The action is not one to administer upon the estate of the bankrupt, or any portion of such estate. The purpose thereof is to ascertain if the plaintiff has a right to resort, by virtue of a specific lien claim,. to the particular property in controversy, as against all other creditors or claimants, for the payment of his debt or the satisfaction of his demand. His rights would be the same whether presented to the state or the federal court in an action to foreclose, or by way of a claim made in the bankruptcy proceedings. Hence it is that

2. BANKRUPTCY: enforcement of specific lien: jurisdiction.

the court which first takes jurisdiction and assumes control of the property retains it for all the purposes of a final order or decree. True, the trustee in bankruptcy may intervene in such action pending in the state court, as did this intervener, and be heard to contest the existence or the validity of the specific lien claimed, and he may well be awarded the property in the event the existence of the lien claimed is denied by the decree. But that a trustee may work an ouster of jurisdiction in the state court in such cases by pointing out the pendency of the bankruptcy proceedings has no support in reason or well-considered authority. The conclusion thus reached is warranted by the following authorities: *Kimberling v. Hartly,* (C. C.) 1 Fed. Rep. 571; *Scott v. Farmers' L. & T. Co.,* 69 Fed. Rep. 22 (16 C. C. A. 358); *National Bank v. Hobbs,* (C. C.) 118 Fed. Rep. 626; Collier on Bankruptcy (4th Ed.) page 255; Bump on Bankruptcy (11th Ed.) page 422.

II. Counsel for appellee, in argument, make the practice point that the appeal is not triable in this court *de novo,* for that the petition of intervention presents no equitable issue. But the action was commenced in equity, and tried in the court below as an action in equity without objection. This being true, plaintiff must be presumed to have assented to the cause proceeding as an equitable action. Moreover, an objection to the form of proceeding cannot be first raised on appeal. *Bibbins v. Clark,* 90 Iowa, 230; *Ryan v. Heenan,* 76 Iowa, 589; *Corey v. Sherman,* 96 Iowa, 114; *Clearfield Bank v. Olin,* 112 Iowa, 476. The case of *Boudinot v. Hamann,* 117 Iowa, 22, is not in conflict with the cases above cited.

3. TRIAL de novo.

III. It will be observed that the bankruptcy proceedings were instituted within four months after the date of the execution of the mortgage to plaintiff. It is the contention of the intervener that the mortgagor was at the time of the giving of such mortgage insolvent; that the giving thereof amounted to an act of bankruptcy, within the meaning of

the federal statute, in that thereby the plaintiff bank was given a preference over other creditors of the mortgagor; and that at the time of the acceptance of such mortgage it had reasonable cause to.believe that thereby preference was intended. Manifestly, if these several propositions of fact are established by the record, the case falls within the provisions of the bankruptcy act and the relief demanded by the intervener should be granted.

We have, as an initial question of fact, was Morgan insolvent on October 11, 1901, the date of the execution of the mortgage to the bank? On behalf of intervener it is made to

4. INSOLVENCY: prior adjudication. appear that the bankruptcy proceedings were predicated upon the giving of the mortgage to the plaintiff, and as an act of preference, and it is pointed out that a material issue tendered by the petition, as filed by the creditors, was insolvency on the part of Morgan. It is further made to appear that the plaintiff bank entered its appearance in the bankruptcy proceedings, and filed therein an answer to the petition, among other things denying the insolvency of Morgan. The issue thus made was tried, resulting in an adjudication of bankruptcy. Based on the conditions as thus made to appear, and as related to the question of insolvency, counsel for intervener invoke the doctrine of res adjudicata. Counsel for the bank essay to meet this contention by asserting that the bank was not a party to the bankruptcy proceeding, that the filing of its answer was a mere gratuity, and that it became in no way bound by the adjudication, except for the purpose of such bankruptcy proceedings. We may concede that the bank was not a necessary party to the proceedings, yet there could have been no other purpose in its appearance, save in protection of its mortgage interests. Manifestly, an adjudication of bankruptcy, involving of necessity a finding of insolvency, would be one step gained in an attack on such mortgage interests. By appearing and filing an answer, the bank, in effect, intervened in the proceedings, and its right to do so was not challenged. Having contested in a court of competent jurisdiction with

the other creditors of Morgan the question of his solvency, we are of the opinion it may not, in an action involving that identical question, wage a similar contest with a trustee representing such creditors. 24 Am. & Eng. Ency. 744, and notes.

But aside from this we think the evidence in the record before us is sufficient to establish the fact of insolvency. Within the meaning of the bankrupt act of July 1, 1898, chapter 541, section 1, subdivision 15, 30 Statutes 544 [U. S. Comp. St. 1901, page 3419], a person is to be deemed insolvent whenever the aggregate of his prope ty, etc., shall not, at a fair valuation, be sufficient in amount to pay his debts. It is to be noted that the question is one of fact, pure and simple. No question of good faith or belief is involved. Now, it appears that Morgan took an invoice of stock February 1, 1901, the aggregate of which was $18,600. Prior to October 11, 1901, merchandise was added amounting to $17,700. From February 1st to October 11th, goods were sold aggregating $16,400. There was on hand, therefore, when the mortgage was made, goods amounting to $19,900. To this sum is to be added book accounts, face value, $8,700; fixtures, $980; a share of telephone stock, $50; making the total assets $29,630. As against the asset account, there was the bank indebtedness, amounting to $18,500, and there was other indebtedness, as we read the record, amounting to about $14,000; thus making a total of $32,500.

IV. Insolvency being established, we have then the remaining question, did the officers of the defendant bank know or have reasonable grounds to believe that a preference was intended to be given by the execution of the mortgage? It is the provision of the bankrupt act, paragraph "b," section 60 (30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), that "if the bankrupt shall have given a preference within the four months before the filing of the petition, * * * and the person receiving it, or the party benefited thereby, or his agent acting therein, shall have

reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." That the execution by a debtor of a mortgage, covering all his property, in favor of one of several existing creditors, is evidence of an intention to prefer such creditor, may well be supposed. But such is not conclusive upon the question. A preference, such as offends the bankruptcy act, must be one likely, in its results, to defeat the collection by other creditors of their claims. Essential to such a preference, therefore, is insolvency, because, if the debtor was solvent, the execution of the mortgage would not, in all liklihood, operate to defeat the other creditors of the mortgagor. Knowledge or a reasonable cause to believe that a preference is intended involves, therefore, knowledge or a reasonable cause to believe that insolvency exists as a matter of fact. This we held in *Boudinot v. Hamann* 117 Iowa, 22, and again in *Deland v. Miller & Chaney Bank,* 119 Iowa, 368, following *Barbour v. Priest,* 103 U. S. 293 (26 L. Ed. 478). The record leaves no room to doubt that the cashier of the plaintiff bank, who arranged to take the mortgage in question, knew that it covered all the property possessed by Morgan. Did he know or have reasonable grounds to believe that Morgan was at the time insolvent, and hence that the effect of the taking of such mortgage would be to defeat some or all the other creditors of Morgan in the collection of their claims? This question we think must be answered in the negative. The information possessed by the cashier of the bank, who alone acted for it, was solely to the effect that Morgan had assets amounting to about $40,000, and that his indebtedness was something less than $30,000. This information he first received from Morgan, and the same appears to have been verified at a subsequent conference between the cashier and Morgan and his attorney, at which the financial condition of Morgan was discussed at length and considered. True, the cashier knew that Morgan was in need of ready money, and tnat some of his minor creditors were clamoring for payment of their claims.

But there is nothing in the record to indicate that he knew or had reasonable grounds to believe otherwise than that the assets of Morgan were sufficient to satisfy all his creditors and leave a margin of $10,000 or thereabouts, as claimed by him. The testimony of the cashier on this point—and it is substantially all that is afforded by the record—is that he believed the situation to be as represented by Morgan; that he expected the business to be continued, and that in time everybody would be paid in full.

We conclude that the taking of the mortgage in question did not constitute a preference, within the meaning of the bankruptcy act. It follows that the decree entered by the district court was right, and it is AFFIRMED.